**Rodolfo RANGEL, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–04–514–CR.**

Court of Appeals of Texas,
Fort Worth.

July 25, 2006.

Stephen R. Bjordammen, Wichita Falls, for Appellant.

Barry L. Macha, Crim. Dist. Atty., Jeff Eaves, Mark Barber, Asst. Crim. Dist. Attys., Wichita Falls, Matthew Paul, State Prosecuting Atty., Lisa C. McMinn, Asst. State's Atty., Austin, for the State of Texas.

PANEL F: LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

## OPINION ON THE STATE'S SECOND PETITION FOR DISCRETIONARY REVIEW

TERRIE LIVINGSTON, Justice.

Pursuant to rule of appellate procedure 50, we have reconsidered our previous opinion on the State's petition for discretionary review. *See* Tex.R.App. P. 50. We withdraw our judgment and opinion dated June 5, 2006, and substitute the following in order to address and apply the recent Supreme Court case of *Davis v. Washington,* — U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

### I. Introduction

Appellant Rodolfo Rangel appeals from his convictions of aggravated sexual assault of a child, indecency with a child, and attempted indecency with a child. In his first issue, appellant argues that the trial court committed harmful error when it determined that C.R., an alleged victim, was unavailable to testify. In his second issue, he argues that the trial court erred in denying his motion for instructed ver-

dict because the evidence presented at trial was insufficient to prove venue as to the offense committed against C.R. In his third issue, appellant argues that the trial court committed error by refusing to require the State to elect among separate offenses and that the jury verdict was not unanimous. Finally, in his six remaining issues, appellant generally complains that the evidence was legally and factually insufficient to support the jury's verdict. We affirm in part and reverse and remand in part.

## II. Background Facts

On January 8, 2003, Debbie Adams, a Child Protective Services (CPS) investigator, began an investigation of appellant and his wife, Rosa, after receiving a referral of abuse. E.R. and C.R. are the biological children of appellant and Rosa, and R.T. and G.T. are Rosa's biological children. On January 10, 2003, CPS removed all four children after G.T. made statements to Adams that appellant had sexually abused her.

On May 4, 2004, appellant was indicted on seven counts of aggravated sexual assault of a child, indecency with a child, and attempted indecency with a child. In count I, the alleged victim was C.R.; in count II, the alleged victim was E.R.; in counts III, V, VI, and VII, the alleged victim was R.T.; and in count IV, the alleged victim was G.T. Appellant pled not guilty to all charges, and trial by jury began on September 27, 2004. The jury found appellant guilty on counts I, III, IV, V, and VI and not guilty as to count VII. On October 1, 2004, the trial court assessed appellant's punishment as to count I, aggravated sexual assault, at fifty years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ); to count III, indecency with a child, at twenty years in TDCJ; to count IV, attempted indecency with a child, at ten years in TDCJ; to count V, aggravated sexual assault, at fifty years in TDCJ; and as to count VI, indecency with a child, at twenty years in TDCJ. On October 18, 2004, the trial court granted appellant's motion for directed verdict as to count II and acquitted him on that count.

## III. Article 38.071

Before trial, the State moved to admit a videotaped interview of C.R., one of appellant's alleged victims, in lieu of C.R.'s live testimony because she was emotionally unavailable to testify. The interview was conducted by a CPS investigator approximately two months after CPS removed C.R. from appellant's home. During the pretrial hearing on the motion, Cheryl Polly, a licensed professional counselor, testified that appearing in the courtroom would be an extremely traumatic experience for C.R., then a six-year-old child, and that although testifying by closed-circuit television would be less traumatic for C.R., she still would not be able to testify because "strangers" would be involved. Polly stated that she began counseling C.R. on February 25, 2003, and that at the time of trial, she was still counseling her once a week or every other week. Additionally, Polly testified that C.R. made outcries that appellant had sexually assaulted her and that when C.R. talked about the assaults, she disassociated, her eyes glazed over, and she was not able to express herself. Polly said that although C.R. was primarily in remission at the time of trial, she was still having symptoms of sexual trauma, such as nightmares and wetting the bed.

After hearing all of the evidence, and upon the State's request, the trial court determined that requiring C.R. to testify would be too traumatic for her, so the trial court granted the State's article 38.071 motion. *See* TEX.CODE CRIM. PROC. ANN.

art. 38.071 (Vernon 2005). In doing so, the trial judge stated that he was trying to balance the harm that C.R. would experience if she were required to testify against appellant's right to confront her. The judge stated that if after watching C.R.'s videotaped interview he determined that she had been guided, then he would reconsider the issue.

In his first issue, appellant contends that the trial court committed harmful error when it denied him his right to confront and cross-examine C.R. The State argues that the trial court did not err by admitting the videotaped interview of C.R. into evidence because C.R. was unavailable to testify. In this same issue, appellant also argues that the trial court erred when it determined that C.R.'s interview was conducted by a neutral individual in a detached manner. The State argues that there is no legitimate allegation that CPS investigators are not neutral as long as they ask non-leading questions.

### A. Unavailability of C.R.

Appellant asserts that the trial court erred in ruling that C.R. was unavailable to testify at the trial. Appellant claims that the evidence presented at the pretrial hearing does not support the trial court's ruling that C.R. was unavailable. Additionally, appellant contends that C.R. could have testified by closed-circuit television like R.T. and G.T. did.

### 1. Applicable Law

Article 38.071, entitled, "Testimony of Child Who is Victim of Offense," applies when a trial court determines that a child under thirteen years of age is unavailable to testify. *Id.* § 1. In this case, the trial court allowed C.R. to testify under these procedures on the State's motion. The pertinent sections of article 38.071 provide,

Sec. 2(a) The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.[1]

. . . .

Sec. 8(a) In making a determination of unavailability under this article, the court shall consider relevant factors including the relationship of the defendant to the child, the character and duration of the alleged offense, the age, maturity, and emotional stability of the child, and the time elapsed since the alleged offense, and whether the child is more likely than not to be unavailable to testify because:

(1) of emotional or physical causes, including the confrontation with the defendant; or

(2) the child would suffer undue psychological or physical harm through his involvement at the hearing or proceeding.

(b) A determination of unavailability under this article can be made after an earlier determination of availability. A determination of availability under this article can be made after an earlier determination of unavailability.

*Id.* §§ 2(a), 8.

### 2. Standard of Review

▮▮▮ The trial court's determination that a child is unavailable is the first step

---

**1.** Article 38.071(5) provides that an attorney for the State or the defendant can move to have the videotape introduced. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071(5).

that must be met in order to satisfy the requirements of article 38.071. *Edwards v. State,* 107 S.W.3d 107, 109–10 (Tex.App.-Texarkana 2003, pet. ref'd). When reviewing the trial court's implied finding of unavailability, we look to see whether the trial court abused its discretion in making that determination. *Id.* at 110. We will not reverse a trial court's ruling that is within the zone of reasonable disagreement. *Id.; see also Green v. State,* 934 S.W.2d 92, 102 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g).

### 3. Analysis

#### a. Article 38.071, Section 8

■ Applying the factors listed in article 38.071, section 8, we first note that C.R. was only six years old at the time of trial, thus meeting the statute's under age thirteen requirement. TEX.CODE CRIM. PROC. ANN. art. 38.071, § 8; *see also Graves v. State,* 176 S.W.3d 422, 428 (Tex. App.-Houston [1st Dist.] 2004, pet. struck) (stating that article 38.071 requires child to be thirteen or younger). Additionally, Polly testified that C.R. would be traumatized if she were required to testify, that C.R. was still in counseling to deal with the sexual abuse, that C.R. still suffered from nightmares and bedwetting, and that C.R. disassociated when she talked about the assaults. *See Lively v. State,* 968 S.W.2d 363, 366–67 (Tex.Crim.App.1998) (noting that trial court heard testimony that child "regressed" when in the defendant's presence and that requiring the child victim to testify would pose a "risk" to the child's recovery). After reviewing all of the evidence, we conclude that the trial court did not abuse its discretion in ruling that C.R. was unavailable because the ruling of the trial court is within the zone of reasonable

disagreement. *See Green,* 934 S.W.2d at 102.

#### b. Article 38.071, Section 2

During the trial, appellant also objected to the introduction of C.R.'s videotaped interview on the basis that the person conducting the interview was not neutral and detached, as required by article 38.071, section 2. Appellant argued that because Camille Cleveland, a CPS investigator, worked for CPS and was affiliated with the State, she did not meet the definition of a neutral, detached interviewer. The trial court overruled appellant's objection and admitted the videotape into evidence. However, the trial court also allowed appellant to inquire about Cleveland's neutrality during her cross-examination.

During her direct examination, Cleveland stated, "I was never involved with the family. All I did in this case was interview the children." Additionally, during her cross-examination, Cleveland testified that she did not participate in the initial investigation, the removal of the children, or the assessment of the children after the interview.

■ Appellant argues that because Cleveland is an investigator with CPS and because the interview was conducted at the Children's Advocacy Center, which is staffed with CPS workers and law enforcement workers, Cleveland was not neutral and detached. We do not find this argument convincing. The mere fact that the interview was conducted by a CPS interviewer does not, by itself, make the interviewer biased. *See Smith v. State,* 88 S.W.3d 652, 671 (Tex.App.-Tyler 2002, pet. ref'd) (concluding that the CPS investigator was neutral), *cert. denied,* 537 U.S. 1206, 123 S.Ct. 1283, 154 L.Ed.2d 1051 (2003). Cleveland testified that she alone had performed approximately 250 video-

taped interviews. We decline to hold that any interviewer who has State connections is not neutral. There must be some other evidence demonstrating that the interviewer is not neutral or detached.

We now turn to an examination of this case. Here, Cleveland stated that her only role with the children was to interview them. Cleveland did not participate in any other aspect of this case. After reviewing the videotapes, we cannot say that Cleveland did not act in a neutral manner. *See id.* (holding that the interviews by a CPS investigator were "conducted in an objective manner"). We hold that the trial court did not abuse its discretion in determining that Cleveland was a neutral interviewer.

## B. Right to Confrontation

Appellant further contends in his first issue that article 38.071 is unconstitutional as applied to him because it denies him his Sixth Amendment right to confrontation. *See* U.S. CONST. amend. VI; *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Appellant claims that C.R.'s videotaped interview is testimonial hearsay, and that regardless of whether she was unavailable, he did not have a prior opportunity to cross-examine her, so the interview is inadmissible. *See id.* at 53–54, 124 S.Ct. at 1365 (holding that for testimonial hearsay to be admissible, declarant must be unavailable *and* defendant must have had a prior opportunity to cross-examine).

## 1. Standard of Review

Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, *i.e.* whether a statement is testimonial or non-testimonial, *de novo. Wall v. State,* 184 S.W.3d 730, 742 (Tex. Crim.App.2006); *see Lilly v. Virginia,* 527 U.S. 116, 137, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999). This is particularly so because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall,* 184 S.W.3d at 742–43. On that question trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation. *Id.* at 743; *see Lilly,* 527 U.S. at 136–37, 119 S.Ct. at 1900.

## 2. Analysis

We recognize that this is a case of first impression in Texas. Although other Texas courts have addressed confrontational complaints in regard to article 38.071, no court has addressed this particular issue post-*Crawford. Cf. Moreno v. State,* Nos. 13–03–00649–CR, 13–03–00650–CR, 2005 WL 1413491, at *2 (Tex.App.-Corpus Christi May 26, 2005, pet. ref'd) (mem.op.) (not designated for publication) (holding *Crawford* did not apply to videotape because victim testified).

In *Marc v. State,* citing *Crawford,* we held that, "without exception, testimonial statements of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant." 166 S.W.3d 767, 778 (Tex.App.-Fort Worth 2005, pet. ref'd) (citing *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374); *see also Hale v. State,* 139 S.W.3d 418, 421 (Tex.App.-Fort Worth 2004, no pet.). Accordingly, the threshold question under *Crawford* is whether the statement is testimonial in nature. *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374; *see also Woods v. State,* 152 S.W.3d 105, 113 (Tex.Crim.App.2004) (recognizing *Craw-*

*ford* drew a distinction between testimonial and non-testimonial statements), *cert. denied,* 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005); *Wilson v. State,* 151 S.W.3d 694, 697–98 (Tex.App.-Fort Worth 2004, pet. ref'd) (noting the threshold question is whether statement is testimonial).

█ The Supreme Court failed to define what constitutes a testimonial statement, but it did state that the term applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogation." *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. Additionally, the Supreme Court offered three formulations to demonstrate the core class of "testimonial" statements: 1) *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; 2) extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and 3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.[2] *Id.* at 51–52, 124 S.Ct. at 1364. The Supreme Court held that, "[w]here testimonial statements are at issue, the only indicium of reliability suffi-cient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68–69, 124 S.Ct. at 1374. A common nucleus of testimonial statements is that they involve a "formal or official statement made or *elicited* with the purpose of being introduced at a criminal trial." *State v. Snowden,* 385 Md. 64, 867 A.2d 314, 324 (2005) (emphasis added).

█ The State argues that C.R.'s statement does not fall within the third category, statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be used at trial, because C.R. did not appreciate the nature of a trial. Although the statement here does not fit neatly into any of the three "core class" categories of testimony described in *Crawford,* we determine that it is nevertheless testimonial.

Two Colorado courts of appeals have held that the test for determining whether a child's statement is testimonial hearsay depends on whether an objective person in the child's position would believe his or her statements would lead to punishment of the defendant. *See People v. Sharp,* No. 04CA0619, 143 P.3d 1047, 1052, 2005 WL 2877807, at *5 (Colo.App. Nov. 3, 2005); *People v. Vigil,* 104 P.3d 258, 263 (Colo. App.2004), *aff'd in part, rev'd in part on other grounds, People v. Vigil,* 127 P.3d 916 (Colo.2006).[3] However, we need not decide what the appropriate standard

---

**2.** Courts around the nation have struggled with the application of *Crawford* to child witnesses, particularly with regard to how courts should apply the concept that a statement is made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," or whether the proper test should be objective or subjective in nature. *Lagunas v. State,* 187 S.W.3d 503, 519 (Tex.App.-Austin 2005, pet. ref'd).

**3.** In *Wall,* although not a case involving the statement of a child, the court of criminal appeals recently held, "The testimonial hearsay inquiry focuses on whether a reasonable declarant, similarly situated (that is, excited by the stress of the startling event), would have had the capacity to appreciate the legal ramifications of her statement." 184 S.W.3d at 742.

should be because we determine that C.R.'s statement was testimonial on other grounds.

In the recent case of *Davis v. Washington,* the Supreme Court attempted to clarify the distinction between testimonial and non-testimonial statements. —— U.S. ——, ——, 126 S.Ct. 2266, 2268, 165 L.Ed.2d 224, ——. The Supreme Court held that

> statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2268–69. In *Davis,* a 911 emergency operator received a phone call but was disconnected before speaking to anyone. *Id.* at 2270. The operator then returned the call, and Michelle McCottry answered the phone and told the operator that she was involved in a domestic disturbance dispute with her boyfriend, Adrian Davis. *Id.* at 2271. The operator then asked McCottry a series of questions about the assault and Davis, including his birth date and his reason for going to McCottry's apartment. *Id.* Davis was later charged with a felony violation of a domestic no-contact order. *Id.* At trial, McCottry did not testify, but the trial court admitted the recorded 911 conversation between McCottry and the 911 emergency operator over Davis's Confrontation Clause objection, and the jury convicted Davis. *Id.*

In its analysis, the Supreme Court stated that the question in *Davis* is "whether, objectively considered, the interrogation that took place in the course of the 911 call produced testimonial statements." *Id.* at 2276. The Court stated that McCottry's statements were not testimonial because (1) she was describing events as they were actually happening rather than past events, (2) any reasonable listener would recognize that McCottry was facing an ongoing emergency, (3) the nature of what was asked and answered, when viewed objectively, was such that elicited statements were necessary to be able to resolve the present emergency, rather than simply to learn what had happened in the past, and (4) McCottry was frantically answering the 911 emergency operator's questions over the phone, in an environment that was not tranquil, or even safe. *Id.* at 2276–77. After looking at all the evidence, the Court concluded that "the circumstances of McCottry's interrogation objectively indicate its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 2277. The Court stated that McCottry was seeking aid, not telling a story about the past. *Id.* at 2279. Accordingly, under these circumstances, the out-of-court statements were not testimonial.

Here, unlike in *Davis,* C.R. was describing past events. The CPS investigator did not even interview C.R. until *two months* after CPS removed her from her home. Additionally, when C.R. talked with the investigator, she was not facing an ongoing emergency. C.R. had already been removed from her home, was placed in foster care, and was receiving counseling for the abuse. When viewed objectively, the nature of what was asked and answered during the interview was such that C.R.'s statements were elicited simply to learn about what had happened in the past. Finally, C.R., like the declarant in *Crawford,* was responding calmly, at the Children's Advocacy Center, to a series of questions,

with the investigator videotaping her answers. *See id.* at 2277. We hold that the present case is clearly distinguishable from the facts in *Davis,* and similar to the facts in *Crawford.*

Moreover, the structured, formalized questioning of C.R. by the investigator, regardless of whether the statement was sworn or unsworn,[4] is more akin to the types of *ex parte* examination discussed and condemned in *Crawford* than a "casual remark to an acquaintance" or even to initial statements made to a police officer responding to a call. *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364. Furthermore, during the interview Cleveland stated that she was asking C.R. questions to make sure that "it" did not happen again. Regardless of whether C.R. understood the full extent to which her answers could be used, i.e., as testimony in a criminal prosecution of appellant, we believe, either under a subjective standard or an objective standard, that a four-year-old child would be able to perceive this as meaning that her words would be used to establish or prove some fact—i.e., that he sexually assaulted her—and that the establishment of that fact was necessary so that a person in authority, whether the investigator or someone else, would make appellant stop.

Here, regardless of whether the four-year-old child may or may not have perceived when she made the statements that they could be used against appellant as evidence in a criminal case, the statute itself clearly contemplates that a child's statement admitted under article 38.071 will function as *testimony* in a criminal case. In *Hightower v. State,* the court of criminal appeals stated that in regard to article 38.071, the legislature "recognized the importance of protecting young children from the turmoil associated with having to give testimony in a courtroom and has acted to eliminate or alleviate that trauma within the parameters of the Constitution." 822 S.W.2d 48, 53 (Tex.Crim. App.1991). Additionally, article 38.071 is titled, *"Testimony* of child who is victim of offense."[5] Tex.Code Crim. Proc. Ann. art. 38.071 (emphasis added). Thus, regardless of what C.R. thought her statements would be used for, they were clearly admitted at trial to function as testimony against appellant.

Having determined that C.R.'s statements were testimonial, we must now determine whether appellant's Sixth Amendment right to confrontation was violated. As stated above, the Supreme Court in *Crawford* held that testimonial statements of a witness who does not appear at trial are not admissible unless he is unavailable to testify *and* the defendant had a prior opportunity to cross-examine him. *Crawford,* 541 U.S. at 59, 124 S.Ct. at 1369; *accord Russeau v. State,* 171 S.W.3d 871, 880 (Tex.Crim.App.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2982, —— L.Ed.2d —— (2006). Having already held that the trial court properly determined that C.R. was unavailable under article 38.071, we now turn to whether appellant had a prior opportunity to cross-examine C.R. *See* Tex. Code Crim. Proc. Ann. art. 38.071.

The primary focus of *Crawford* is directed at the common-law guarantee of the right to cross-examine the witnesses against the accused in order to "tease out the truth" before the trier of fact. *Craw-*

4. The Court stressed that whether or not a statement was sworn is not a determinative factor in finding a statement to be testimonial. *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364; *see Lagunas,* 187 S.W.3d at 515.

5. We do not agree with the State's contention that our prior opinion holds that any statement under 38.071 is *automatically* testimonial. However, under the facts of this case, we determine that C.R.'s statement is testimonial.

*ford,* 541 U.S. at 43–46, 124 S.Ct. at 1359–61; *accord Reyna v. State,* 168 S.W.3d 173, 183 (Tex.Crim.App.2005). However, several state courts that have addressed the Sixth Amendment post-*Crawford* have held that the Confrontation Clause is not violated even though the defendant was not allowed to cross-examine the witness face-to-face at trial. *See, e.g., Blanton v. State,* 880 So.2d 798, 801 (Fla.Dist.Ct.App. 2004) (stating defendant had opportunity to cross-examine victim when defendant availed himself of opportunity to take victim's deposition); *Howard v. State,* 816 N.E.2d 948, 959 (Ind.Ct.App.2004) (holding Confrontation Clause not violated when child victim's deposition was entered into evidence because it was given under oath and at defendant's request).

We believe that article 38.071 provides an effective alternative to the traditional face-to-face confrontation at trial. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, § 2(b). It provides,

> If a recording is made under Subsection (a) of this section and after an indictment is returned or a complaint has been filed, by motion of the attorney representing the state or the attorney representing the defendant and on the approval of the court, both attorneys may propound written interrogatories that shall be presented by the same neutral individual who made the initial inquiries, if possible, and recorded under the same or similar circumstances of the original recording with the time and date of the inquiry clearly indicated in the recording.

*Id.*

In *Smith v. State,* the Tyler court of appeals, albeit pre-*Crawford,* held that the defendant's right to confrontation was not violated when he had the opportunity to submit written interrogatories to the victim under article 38.071. 88 S.W.3d 652, 670–71 (Tex.App.-Tyler 2002, pet. ref'd), *cert. denied,* 537 U.S. 1206, 123 S.Ct. 1283, 154 L.Ed.2d 1051 (2003). In *Smith,* the trial court determined that the victim, who was five years old at the time the first interview was conducted, was unavailable and allowed her videotaped interview with a CPS investigator into evidence at trial. *Id.* at 656–57. However, after making the finding of unavailability upon the defendant's objection, the trial court allowed the defendant and the State to submit written interrogatories for presentation to the victim under article 38.071 during another videotaped interview. *Id.* at 657. The Tyler court held that although written interrogatories lack spontaneity, the defendant had the opportunity to test the reliability of the victim's responses to the first interview by submitting these questions. *Id.* at 670–71. Additionally, the court noted that the written interrogatories were more effective than traditional cross-examination because the child victim was unable to testify in a courtroom setting. *Id.* at 671.

█ In this case, since C.R. was unavailable for traditional cross-examination, article 38.071 would have allowed appellant an opportunity to submit written interrogatories to her in another videotaped interview. But he never did. Accordingly, we believe that appellant had an opportunity to effectively cross-examine C.R. through written interrogatories. *See* TEX.CODE CRIM. PROC. ANN. art. 38.071, § 2(b). The statute afforded appellant the opportunity to submit interrogatories after viewing the first videotaped interview. *See id.* If appellant was concerned about a question asked by Cleveland or a response given by C.R. during the interview, he should have utilized article 38.071, section 2(b) by requesting and submitting written interrogatories. *See id.*

■ We hold that in this case, the Confrontation Clause was not violated because article 38.071 allowed appellant an opportunity to submit written interrogatories to C.R. after the trial court determined that C.R. was unavailable. Further, by submitting interrogatories, appellant would have had the opportunity to test the reliability of C.R.'s statements from the prior interview. *See Smith,* 88 S.W.3d at 670–71. Unfortunately, appellant did not avail himself of this opportunity. When a defendant fails to use the statutory procedures available to him that could safeguard his rights, his failure to do so cannot later form the basis for his constitutional attack on article 38.071. *See, e.g., Adams v. State,* 161 S.W.3d 113, 114 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (holding defendant waived right to challenge jurisdiction when he failed to follow article 4.18 of the code of criminal procedure); *see also State v. Yount,* 853 S.W.2d 6, 9 (Tex. Crim.App.1993) (op. on reh'g) (holding that defendant who requested charge on lesser-included offense is estopped from claiming on appeal that conviction of lesser-included offense is barred by limitations). Since appellant did not take advantage of the system in place that could have reasonably protected his right of confrontation, he has waived his Confrontation Clause challenge to article 38.071 on appeal.

Having determined that C.R.'s statements were testimonial, C.R. was unavailable, and appellant had an opportunity to cross-examine C.R. through written interrogatories, we hold that appellant was not denied his Sixth Amendment right to confrontation. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. Therefore, we overrule appellant's first issue.

## IV. Motion for Instructed Verdict on Venue

In issue two, appellant complains that the trial court erred in overruling his motion for instructed verdict as to count I of the indictment because the State failed to prove the venue of the crime. Specifically, count I charges appellant with aggravated sexual assault of C.R. The State argues that it proved by a preponderance of the evidence that the sexual assault occurred in Wichita County.

### A. Applicable Law

The pertinent part of article 13.15 of the code of criminal procedure provides that a "[s]exual assault may be prosecuted in the county in which it is committed." TEX. CODE CRIM. PROC. ANN. art. 13.15 (Vernon 2005). Article 13.17 provides that "[t]o sustain the allegation of venue, it shall only be necessary to prove by the preponderance of the evidence that by reason of the facts in the case, the county where such prosecution is carried on has venue." *Id.* art. 13.17. On appeal we are to presume venue was proved in the trial court unless it was disputed at trial or the record affirmatively shows the contrary. *See* TEX. R.APP. P. 44.2(c)(1).

### B. Analysis

■ The prosecution has the burden to prove that venue is proper in the county where the trial is sought. Proof of venue must be demonstrated by either direct or circumstantial evidence. *Black v. State,* 645 S.W.2d 789, 790 (Tex.Crim.App. 1983). Evidence is sufficient to prove venue if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged. *Rippee v. State,* 384 S.W.2d 717, 718 (Tex.Crim.App. 1964). When venue is made an issue in the trial court, failure to prove venue in the county of prosecution constitutes reversible error. *Black,* 645 S.W.2d at 791; *see also Knabe v. State,* 836 S.W.2d 837, 839 (Tex.App.-Fort Worth 1992, pet. ref'd).

As discussed above, C.R. was declared unavailable by the trial court and did not testify at trial. However, the March 26, 2003 videotaped interview between C.R. and Cleveland was introduced at trial. At the close of the State's case, appellant moved for an instructed verdict, asserting that venue was not proven as to C.R. At the hearing on the motion, appellant stated that in the videotaped interview when Cleveland asked C.R. if the assaults had occurred in Wichita Falls, C.R. stated "no."

The State argued that venue was proven by the totality of the evidence at trial. First, when C.R. was asked where her parents lived, she responded, "down the street," and when she was asked where the assaults happened, C.R. responded, "down the street." Second, Polly stated that when she asked C.R. when the assaults happened, C.R. stated that they happened when she was four and that it was right before she went into foster care. According to C.R.'s statements, the assaults occurred when C.R. was living in Wichita County. Third, in the videotaped interview with G.T., G.T. stated that the assaults happened when she was in second grade, and C.R. would have turned four years old after G.T. completed the second grade. After hearing the evidence from both sides, the trial court overruled appellant's motion for an instructed verdict.

In C.R.'s March 26, 2003 interview, when Cleveland asked C.R. where her parents lived, she responded, "down the street." However, C.R. also said during the interview, "When I lived in Wichita Falls, my dad was good." Additionally, when Cleveland asked C.R. where she lived when appellant touched her "bottom," C.R. responded, "down the street." Cleveland then asked her if it was in Wichita Falls, and C.R. said "no," and Cleve-

land then asked her where she lived, and C.R. responded, "down the street."

Polly testified that she never asked, and C.R. never told her, what city or county in which the abuse occurred. Polly stated that the only thing C.R. told her was that it happened "prior to [her] coming into foster care when she was four."

Dr. Terry Johnson, a pediatrician, stated that he examined C.R. on May 15, 2003, and that there was a significant decrease in her hymenal tissue. Dr. Johnson testified that he was not able to date when the assaults took place.

After reviewing all of the evidence, we hold that the trial court did not err in overruling appellant's motion for instructed verdict. Even though C.R. stated that the assaults did not occur in Wichita Falls, she also stated that the assaults took place "down the street" and that her parents lived "down the street." The State contends that when C.R. said "down the street," she was talking about Wichita Falls because that is where the interview took place. We agree with the State. If the assaults took place in Conroe, Texas or Washington, then it would not seem logical for C.R. to say that the assaults took place "down the street." Further, C.R.'s parents were actually in Wichita Falls when C.R. responded that they were "down the street." *See Shilling v. State*, 977 S.W.2d 789, 790–91 (Tex.App.-Fort Worth 1998, pet. ref'd) (determining that evidence was sufficient to prove venue was proper in Denton County). We hold that venue was proven as to C.R. by a preponderance of the evidence; therefore, we overrule appellant's second issue.

## V. Jury Charge

In his third issue, appellant complains (1) that the trial court erred when it refused to require the State to elect among separate offenses and (2) that the jury

verdict was not unanimous because the jury charge listed several different offenses and some jurors could have found appellant guilty of one offense, while other jurors could have found him guilty of a different offense listed in count IV.[6] The State argues that although there was evidence presented at trial as to several incidents of attempted indecency with a child in regard to G.T., there was only one incident that met the burden of proof of beyond a reasonable doubt.

## A. Error Analysis

■ Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim.App.1994). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Id.* at 731–32.

The relevant portion of the jury charge stated,

[I]f you believe from the evidence beyond a reasonable doubt, that on or about the 13th day of January, 2003, in the County of Wichita and the State of Texas, the defendant, did then and there, with the specific intent to commit the offense of Indecency with a Child of [G.T.], do an act, to-wit: by asking [G.T.] to touch his genitals and/or by moving his hand towards [G.T.] to try to touch her breasts or genitals and/or by offering [G.T.] money which amounted to more than mere preparation that tended but failed to effect the commission of the offense....

6. We hold that appellant forfeited his complaint regarding the election requirement because he did not brief the issue, even though he lists it in the statement of his issue. If a party provides no argument or legal authority to support its position, the appellate court may properly overrule the issue or point as inadequately briefed. TEX.R.APP. P. 38.1(h);

■ We rely on the "separate offenses" analysis conducted by the court of criminal appeals in *Vick v. State* to determine whether the offense of indecency with a child in section 21.11 of the penal code involves separate offenses. 991 S.W.2d 830, 832–33 (Tex.Crim.App.1999); *see also* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003); *Finster v. State*, 152 S.W.3d 215, 218 (Tex.App.-Dallas 2004, no pet.). The relevant portion of section 21.11 states,

(a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person:

(1) engages in sexual contact with the child or causes the child to engage in sexual contact; *or*

(2) with intent to arouse or gratify the sexual desire of any person:

. . .

(B) causes the child to expose the child's anus or any part of the child's genitals.

. . . .

(c) In this section, "sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person:

(1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; *or*

(2) any touching of any part of the body of a child, including touching

*Tong v. State*, 25 S.W.3d 707, 710 (Tex.Crim. App.2000), *cert. denied*, 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001); *Mosley v. State*, 983 S.W.2d 249, 256 (Tex.Crim.App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

through clothing, with the anus, breast, or any part of the genitals of a person. TEX. PENAL CODE ANN. § 21.11 (emphasis added). Section 21.11(a)(1) focuses on the contact of the child to the person, whereas section 21.11(a)(2)(B) focuses on the exposure of the child. Additionally, an offense under section (a)(1) is a felony of the second degree, but an offense under section (a)(2) is a felony of the third degree. *Id.* § 21.11(d). It is apparent that the legislature intended to separately and distinctly criminalize each act in the statute. *See Vick,* 991 S.W.2d at 833. We conclude that each separately described conduct in the statute constitutes a separate statutory offense. *See id.*

Section 15.01 of the penal code defines criminal attempt. TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003). The statute provides, "A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." *Id.* We hold that in reviewing whether the trial court erred by allowing the State to charge in the disjunctive, the fact that the offenses were not completed has no effect. Appellant correctly points out that there have been no cases that allow the State to avoid the unanimity requirement when only attempted offenses are alleged. Additionally, article V, section 13 of the Texas Constitution does not specify that the unanimity requirement applies only to completed offenses. *See* TEX. CONST. art. V, § 13. Therefore, we hold that article V applies to inchoate offenses.

A jury verdict in a criminal case must be unanimous. TEX. CONST. art. V, § 13. A unanimous verdict ensures that the jury agrees on the factual elements underlying an offense—it is more than mere agreement on a violation of a statute. *Francis,* 36 S.W.3d at 125. A

trial court may submit a disjunctive jury charge and obtain a general verdict where the alternate theories involve the commission of the "same offense." *Finster,* 152 S.W.3d at 218. If an indictment alleges different methods of committing the *same* offense in the conjunctive ("and"), it is not improper to submit the different methods to the jury in the disjunctive ("or"). *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992). Of course, if the application paragraph of the charge authorizes conviction only upon a finding of both ways of committing the offense (by using "and"), it is necessary for the State to prove *both* means. *Ortega v. State,* 668 S.W.2d 701, 707 (Tex.Crim.App.1984) (op. on reh'g), *overruled on other grounds by Gollihar v. State,* 46 S.W.3d 243, 252 (2001). When a defendant is charged with *multiple* offenses, the jury charge may submit the offenses in the disjunctive, but the trial court must instruct the jury that it must be unanimous in deciding which offense the defendant committed, and the record must show that the verdict is unanimous. *Ngo v. State,* 175 S.W.3d 738, 749 & n. 43 (Tex.Crim.App.2005). We must determine whether the jury charge merely charged alternative theories of committing the same offense or whether the charge included two or more separate offenses charged disjunctively. *See Finster,* 152 S.W.3d at 218.

The attempted breast-touching, asking G.T. to touch appellant's genitals, and appellant's offering G.T. money so that he could touch her "private" are different offenses and therefore should not have been charged in the disjunctive within the same count IV. *See Francis,* 36 S.W.3d at 125. By the trial court's doing so, it is possible that the jury did not unanimously decide on which offense appellant was

guilty of under this count. *See id.* (stating that six members could have found defendant guilty of one offense under the statute, while the other six could have found defendant guilty of the second offense); *see also Ngo,* 175 S.W.3d at 749 (holding that the charge might have led jurors to think that they only had to agree on a guilty verdict, instead of specifying that they had to agree on the specific criminal act set out in the charge). The State's argument that only one offense was proven beyond a reasonable doubt is not compelling. The charge should not have included offenses for which the State did not meet its burden of proof. *See, e.g., Garza Garcia v. State,* 787 S.W.2d 185, 185 (Tex. App.-Corpus Christi 1990, no pet.) (noting appellant moved for directed verdict alleging State failed to meet burden of proof). Although it would be reversible error entitling appellant to an acquittal, the jury could have convicted appellant of one (or both) of the offenses for which the State contends the evidence is insufficient. Because we are unable to determine which offense in count IV the jury convicted appellant of, we conclude the trial court erred by charging the jury disjunctively with three possible offenses in count IV.

### 2. Harm Analysis

 Having found error in the court's charge on count IV, we must determine whether sufficient harm resulted from the error to require reversal. Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of [the] defendant," which means no more than that there must be *some* harm to the accused from the error. Tex.Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); *see also Abdnor,* 871 S.W.2d at 731–32; *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g). In other words, a properly preserved error, which

occurred in this case, will call for reversal as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App.2000).

 We are unable to determine whether the jury's verdict was unanimous as to any of the count IV offenses. The charge did not include *Ngo's* unanimity instruction. In addition, we cannot tell from the record whether the verdict was unanimous or not. Therefore, we are unable to determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See Francis,* 36 S.W.3d at 125 (sustaining the appellant's issue because the charge allowed the appellant to be convicted on less than a unanimous verdict). We sustain issue three, reverse the judgment of the trial court as to count IV, and remand count IV to the trial court for a new trial.

## VI. Legal and Factual Sufficiency

In issues four through nine, appellant argues that the evidence is legally and factually insufficient to support his convictions. Specifically, he contends that the evidence is legally and factually insufficient to support the jury's verdict that he was guilty of the offenses alleged in count III, count V, and count VI of the indictment. Count III charged appellant with indecency with a child by touching R.T.'s genitals, count V charged him with aggravated sexual assault by penetrating R.T.'s mouth with appellant's penis, and count VI

542

charged him with aggravated sexual assault by penetrating R.T.'s anus.

## A. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Hampton v. State,* 165 S.W.3d 691, 693 (Tex.Crim.App.2005).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *See Zuniga v. State,* 144 S.W.3d 477, 481 (Tex. Crim.App.2004). The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt. *Id.* at 484. There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. *Id.* at 484–85. "This standard acknowledges that evidence of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt." *Id.* at 485. In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt. *Id.* In performing a factual

sufficiency review, we are to give deference to the fact finder's determinations, including determinations involving the credibility and demeanor of witnesses. *Id.* at 481; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We may not substitute our judgment for the fact finder's. *Zuniga,* 144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence. *Id.* at 484, 486–87. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

## B. Analysis

Appellant argues that the evidence is legally and factually insufficient because there were numerous discrepancies between R.T.'s statements before the trial and his live testimony. Appellant also asserts that there was never a medical examination performed on R.T. that would corroborate his testimony and that G.T.'s testimony is the only other evidence that alleges that appellant assaulted R.T. Additionally, appellant claims that R.T.'s claims are suspicious because of the long time, approximately a year, that had passed from R.T.'s removal from the home until R.T. told anyone about the abuse. The State contends that there is ample evidence to show that appellant sexually abused R.T. Further, the State argues that the delay in R.T.'s making the statements does not require reversal under the legal and factual sufficiency standards because the evidence shows that he was reticent to tell anyone about the abuse, especially strangers.

Adams testified that she spoke to R.T. on January 8 and 9, 2003, and that he did not disclose to her that he had been sexually abused, even though she gave him an

opportunity to do so. In addition, Kerry Hererra, a CPS child case worker, testified that R.T. had five interviews with Dr. Spiller, a psychologist, and that when Dr. Spiller asked R.T. if he had been the victim of sexual abuse, he stated, "I don't know" and "I don't remember."

Polly testified that she started counseling R.T. in April 2003. She stated that she built a rapport with R.T. and that he had exhibited signs of being sexually abused. However, on cross-examination, Polly stated that R.T.'s behavior could be consistent with sexual abuse, family violence, or both family violence and sexual abuse. In February 2004, R.T. finally disclosed to Polly that appellant had sexually abused him. R.T. told Polly that appellant had fondled his penis and that appellant made him touch appellant's penis. In regard to the questions asked by Dr. Spiller, Polly testified that it would not have been unusual for R.T. to answer "I don't know" and "I don't remember" for various reasons, such as fear or shame, or if R.T. had not felt comfortable with Dr. Spiller.

Cleveland testified that she interviewed R.T. and G.T. as part of the investigation. During her testimony, the State introduced an April 4, 2003 videotape of G.T.'s interview with Cleveland at the Children's Advocacy Center. During the interview, G.T. stated that one day she went inside to get her sister's jacket and saw appellant trying to touch R.T. on his penis while R.T. was watching cartoons. G.T. stated that she asked R.T. if he wanted to go outside and play with her, C.R., and E.R., and he said yes and went outside with G.T. Later in the interview, G.T. stated that this incident occurred in the living room when Rosa was at work and that appellant tried to touch R.T.'s penis with his hand. She further stated that although she saw appellant try to touch R.T., R.T. had never

told her that appellant had sexually abused him.

G.T.'s second interview on June 4, 2004, was also introduced at the trial. G.T. told Cleveland that one day she went inside the house and saw appellant trying to make R.T. put his mouth on appellant's penis, and when she saw this, she told R.T. to go outside with her, which he did.

The State also introduced a June 4, 2004 videotape of R.T.'s interview with Cleveland. During the interview, R.T. told Cleveland that appellant made him touch appellant's penis with his mouth. He also stated that when he was with appellant in the living room, appellant took R.T.'s hand and made him touch appellant's penis. R.T. stated that appellant made him touch appellant's penis five to ten times and that all of the sexual assaults happened in the living room. In addition, R.T. told Cleveland that appellant touched R.T.'s penis with his hand under R.T.'s clothes while they were both standing up. R.T. stated that appellant had made him put his mouth on appellant's penis more than ten times, but that appellant never put his mouth on R.T.'s penis and never hurt his bottom in any other way. However, R.T. later corrected himself and stated that he had forgotten, but that appellant had put his penis in his bottom when he was six or seven years old, that appellant was behind him when this happened, and that when he tried to turn around, appellant would not let him. R.T. stated that when the assault occurred, he had all his clothes on.

At trial, Christie Cook, R.T.'s former foster mother, testified that she talked with R.T. on Memorial Day weekend in May 2004 after he had sexually acted out while they were at the lake. During this conversation, R.T. confided in Cook that appellant had sexually abused him. Specifically, R.T. said that appellant would force his head on appellant's penis, appel-

lant would put his penis in R.T.'s bottom, and that appellant would put his mouth on R.T.'s penis.

At trial, R.T. testified that appellant touched him on his bottom and penis. R.T. stated that appellant put his penis in R.T.'s bottom about six or seven times, and that when appellant did this, R.T.'s pants were down and it hurt him. R.T. stated that appellant grabbed his hand and tried to make him touch appellant on his penis. He also testified that appellant touched his penis, but when appellant did this, he moved appellant's hand away and pulled up his pants. R.T. stated that appellant tried to make him put his mouth on appellant's penis five to six times, and on the last time, appellant got R.T. to put his mouth on appellant's penis and then R.T. "washed it off" of his mouth. R.T. stated that every time appellant touched him inappropriately, he would tell Rosa, and she would call the police, but appellant would run away before the police arrived at their home.

During trial, G.T. testified that she saw appellant touch R.T. inappropriately only one time. G.T. stated that when Rosa was at work, appellant tried to get R.T. to put his mouth on appellant's penis, but that R.T. did not do it because G.T. walked in and told R.T. to go outside and play. In addition, G.T. testified that during this incident, R.T. was wearing all of his clothes and that appellant had his pants unzipped.

Rosa testified that the children never informed her that appellant had touched them inappropriately, and she never saw them being touched inappropriately. She stated that she would work on the weekends and that appellant would watch the children while she was at work. Although she testified that the police had never been called because R.T. told her that appellant had sexually abused him, appellant did use physical violence against R.T. and G.T.

Applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support appellant's convictions. The jury, as the trier of fact, was free to weigh the evidence and resolve any conflicts in the witnesses' testimony. *See Elder v. State,* 132 S.W.3d 20, 26 (Tex.App.-Fort Worth 2004, pet. ref'd), *cert. denied,* 544 U.S. 925, 125 S.Ct. 1645, 161 L.Ed.2d 484 (2005); *see also Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. We hold that the evidence, when viewed in the light most favorable to the verdict, supports a determination beyond a reasonable doubt that appellant was guilty of indecency with a child as alleged in count III, that appellant was guilty of aggravated sexual assault as alleged in count V, and that appellant was guilty of indecency with a child as alleged in count VI. We overrule appellant's issues four, six, and eight. Additionally, when viewed neutrally, the evidence is not so obviously weak as to render the verdict clearly wrong or so greatly outweighed by contrary proof as to indicate manifest injustice. We overrule issues five, seven, and nine.

## VII. Conclusion

Having overruled appellant's first, second, and fourth through ninth issues, we affirm the judgment of the trial court as to counts I, III, V, VI, and VII. Having sustained his third issue, we reverse the judgment of the trial court on count IV and remand the cause for a new trial on that count.

DAUPHINOT, J., filed a dissenting and concurring opinion.

LEE ANN DAUPHINOT, Justice, dissenting and concurring.

The majority thoughtfully addresses a thorny issue that asks how trial courts can protect child complainants without sacrific-

ing the defendant's constitutional due process rights. In upholding the trial court's decision that confrontation is not required when the child is unavailable to testify, the majority relies on existing statutory law, as indeed it must since courts are not legislative bodies. But I respectfully submit that that existing law does not adequately protect the defendant's constitutional rights to cross-examine and confront the witnesses against him, especially in light of *Crawford v. Washington.*[1]

As our sister court in Waco has provided,

> In *Crawford,* the Supreme Court revisited its prior decision in *Ohio v. Roberts,* in which the Court had held that the admission of the hearsay statement of an unavailable witness does not violate the right of confrontation so long as the statement "falls under a 'firmly rooted hearsay exception' or bears 'particularized guarantees of trustworthiness.'" The Court concluded in *Crawford* that the *Roberts* rationale was not "faithful to the original meaning of the Confrontation Clause."
>
> In place of the *Roberts* standard, the Court adopted a two-part test, depending on whether the statement at issue is "testimonial" or "non-testimonial."[2]

In *Crawford,* the Supreme Court explained,

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evi-

dence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.[3]

The Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."[4] As our sister court in Austin has pointed out,

> A central holding of *Crawford* is that the Confrontation Clause is a rule of procedure, not of evidence. "If there is one theme that emerges from *Crawford,* it is that the Confrontation Clause confers a powerful and fundamental right that is no longer subsumed by the evidentiary rules governing the admissibility of hearsay statements." The constitutional requirement that a testimonial statement be subject to cross-examination in criminal cases "does not evaporate when testimony happens to fall within some broad modern hearsay exception, even if the exception is sufficient in other circumstances." In this respect, it is irrelevant that a testimonial statement may meet the excited utterance exception test. Mere reliability is not enough to satisfy the Confrontation Clause where the extrajudicial statements are of a testimonial nature. "Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices." Thus, under *Crawford,* the Confrontation Clause analysis will usually turn on the question of whether a particular statement is testimonial or nontestimonial in nature.

1. 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

2. *Hanson v. State,* 180 S.W.3d 726, 731 (Tex. App.-Waco 2005, no pet.) (citations omitted).

3. 541 U.S. at 68, 124 S.Ct. at 1374.

4. U.S. Const. amend. VI; *see Crawford,* 541 U.S. at 42, 124 S.Ct. at 1359.

On the other hand, the *Roberts* line of cases may remain instructive or controlling with regard to nontestimonial hearsay.[5]

Section 2(b) of article 38.071 of the code of criminal procedure, the statute at issue in the case before us, provides,

> If a recording is made under Subsection (a) of this section and after an indictment is returned or a complaint has been filed, by motion of the attorney representing the state or the attorney representing the defendant and on the approval of the court, both attorneys may propound written interrogatories that shall be presented by the same neutral individual who made the initial inquiries, if possible, and recorded under the same or similar circumstances of the original recording with the time and date of the inquiry clearly indicated in the recording.[6]

The statement contemplated by the statute is clearly testimonial, as the majority has declared. But written interrogatories presented by a neutral individual are neither confrontation nor cross-examination as mandated by state and federal constitutions and *Crawford*. This statutory provision, instead of curing the confrontation problem when the child is unavailable, compounds the problem by allowing the creation of yet another testimonial statement not subject to the procedural safeguards of confrontation and cross-examination.

The *Crawford* court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."[7] Additionally, as Judge Cochran has noted in a unanimous opinion of the Texas Court of Criminal Appeals,

> The Confrontation Clause may act as a brake upon the admission of "testimonial" child outcry statements unless the child actually testifies or is presently unavailable but has been subject to cross-examination in a prior proceeding.[8]

Consequently, while I agree with the majority's disposition of the remaining issues in the case now before this court, I must respectfully dissent from the majority's holding that the article 38.071 provision for written interrogatories satisfies the confrontation and cross-examination requirements of due process.

---

5. *Lagunas v. State*, 187 S.W.3d 503, 515 (Tex. App.-Austin 2005, pet. ref'd) (citations omitted).

6. Tex.Code Crim. Proc. Ann. art. 38.071, § 2(b) (Vernon 2005).

7. *Crawford*, 541 U.S. at 69, 124 S.Ct. at 1374.

8. *Martinez v. State*, 178 S.W.3d 806, 811 n. 21 (Tex.Crim.App.2005).