COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TIMOTHY FONSECA, | § | No. 08-19-00227-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2018D02567) |

# **O P I N I O N**

Appellant, Timothy Fonseca, appeals his conviction of two counts of assault of a family or house member. TEX.PENAL CODE ANN. § 22.01(b)(2)(B). In Issue One, Appellant claims he was denied effective assistance of counsel. In Issue Two, Appellant challenges the admission of what he characterizes as prejudicial hearsay in violation of the Confrontation Clause. We affirm.

## BACKGROUND

### *Factual Background*

El Paso Police Officer Oscar Gabaldon and his partner responded to a radio dispatch call at around one in the morning on a reported family violence assault. The victim, Elodia Arzate, was treated at the scene for her injuries and provided a video statement to the police. Appellant proceeded to trial on two counts of assault of a family or house member by: (1) impeding the normal breathing or circulation of the blood of Elodia Arzate by blocking her nose or mouth; and

(2) impeding the normal breathing or circulation of the blood of Elodia Arzate by applying pressure to her throat or neck.

At trial, the responding officers testified as to Arzate's shaken appearance and their respective observations of Appellant and the scene. Photos of Arzate, her injuries, and the scene were admitted into evidence. Arzate's daughter, H.H., testified on behalf of the State. H.H. witnessed the assault and intervened to save her mother; H.H. testified to this account in detail.

Appellant was found guilty on both counts of assault of a family or house member. Appellant subsequently filed a motion for new trial arguing trial counsel, Sergio Gonzalez, provided him with ineffective assistance. After a hearing, the trial court denied Appellant's motion for new trial, making no findings of fact or conclusions of law.

### *Procedural History*

Appellant was found guilty by a jury of two counts of assault of a family or house member. TEX.PENAL CODE ANN. § 22.01(b)(2)(B). The jury found the enhancement paragraphs true, and assessed a punishment on each count at fifty years' confinement in the Texas Department of Criminal Justice Institutional Division. Appellant filed a motion for new trial, which was denied. This appeal followed.

### DISCUSSION

In Issue One, Appellant argues he was denied effective assistance of counsel. In Issue Two, Appellant argues the trial court abused its discretion by admitting testimony in violation of the Confrontation Clause. We disagree.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In Issue One, Appellant argues he was denied effective assistance of counsel due to trial counsel's representation of Arzate and her brother in separate legal matters. Appellant also

2

contends trial counsel's performance fell below the objective standard of reasonableness based on prevailing norms.

## *Standard of Review & Applicable Law*

A trial judge's denial of a motion for new trial is reviewed under an abuse of discretion standard. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex.Crim.App. 2014). The U.S. Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. CONST. Amend. VI; TEX.CONST. art. I, § 10. The proper measure of attorney performance is simply reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Among the basic duties owed to a criminal defendant is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. *Id*. Additional overarching duties include to advocate the defendant's cause, to consult with the defendant on important decisions, and to keep the defendant informed of important developments during the prosecution. *Id*. These basic duties neither exhaustively define the obligations of counsel, nor form a checklist for the evaluation of attorney performance. *Id*. No particular set of detailed rules for counsel's conduct can satisfactorily account for the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. *Id*. at 688-89. Any such set of rules would interfere with the constitutionally protected independence of counsel and would restrict the wide latitude counsel has in making tactical decisions. *Id*. at 689. Thus, the purpose of the effective assistance guarantee of the Sixth Amendment is simply to ensure criminal defendants receive a fair trial. *Id*.

The court must determine whether, in light of all the circumstances, the identified acts or omissions of defense counsel were outside the wide range of professionally competent assistance. *Id*. at 690. We must also recognize the strong presumption that counsel rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. An error by counsel, even if professionally unreasonable, does not warrant reversal if the error had no effect on the judgment. *Id*. at 691. Texas courts adhere, as we must, to the Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

A defendant claiming ineffective assistance of counsel must show (1) counsel's performance was deficient; and (2) he was prejudiced as a result of trial counsel's deficient performance. *Strickland*, 466 U.S. at 690. To prove prejudice, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694.

### a. Conflict of Interest

Appellant maintains a conflict of interest existed due to trial counsel's (1) long personal history with Arzate, (2) representation of Arzate in a traffic citation during the pendency of Appellant's trial, and (3) representation of Arzate's brother at a bond hearing the day before jury selection of Appellant's trial.

When a defendant makes a claim of a conflict of interest for the first time after trial, as is the case here, he must show a conflict of interest actually existed, which adversely affected the adequacy of his representation. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Thus, for a defendant to demonstrate a violation of his right to the reasonably effective assistance of counsel based on a conflict of interest, he must show: (1) defense counsel was actively representing conflicting interests; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex.Crim.App. 1997).

Before his trial, Appellant personally gave Arzate's traffic ticket to Gonzalez to handle.

4

Gonzalez testified he never met with Arzate or discussed the traffic ticket with her. Thus, Appellant was well aware of Gonzalez's representation of Arzate. Appellant secured Gonzalez to represent Arzate with the traffic matter because Appellant "wanted to keep her happy so she would be favorable to us and not show up at trial." It was Gonzalez's strategy to encourage Arzate not to testify because she was the complaining witness and the State would have to prove its case without her testimony.

Additionally, and also at Appellant's request, Gonzalez represented Arzate's brother, George, at a bond hearing. According to Gonzalez, Appellant told Gonzalez that George was the mother's favorite son and if Gonzalez represented George, there might be a possibility George could convince his mother to discourage H.H. from testifying. H.H. is Arzate's daughter and was "essentially the state's case" at trial. Gonzalez testified he represented Arzate and her brother, George, at the behest of Appellant. Gonzalez maintains he had no conflict of interest or material issues between the assault case, Arzate's traffic ticket, or George's bond hearing. Gonzalez has represented Appellant in approximately ten criminal matters since the early 1990's; this is the first time Appellant has complained of Gonzalez's representation. And, Gonzalez testified, by his deliberate strategy of not calling Arzate as a witness at trial, Gonzalez was not shielding himself from personal or professional liability. Gonzalez's strategy was to insulate Appellant from Arzate's potentially damaging testimony.

When the trial court has not made explicit fact findings in denying a motion for new trial, as here, the reviewing court should imply all findings necessary to support the ruling when such implicit factual findings are both reasonable and supported in the record. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex.Crim.App. 2005). The trial court determines the credibility of witnesses and even if the testimony is not controverted or subjected to cross-examination, the trial court has

5

discretion to disbelieve that testimony. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex.Crim.App. 2014).

Although some of Gonzalez's conduct could be seen as professionally unreasonable, we cannot say Appellant was deprived effective assistance of counsel due to conflicting interests. An error by counsel, even if professionally unreasonable, does not warrant reversal if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691. Gonzalez, at Appellant's request and approval, deliberately chose to refrain from calling Arzate as a witness at trial because her testimony would have been harmful.[1] The trial court chose to believe Gonzalez at the hearing for the motion for new trial and that decision is supported by the record. Appellant has failed to show how Arzate's traffic ticket and her brother's bond hearing had issues in common with Appellant's proceeding and how Gonzalez took actions detrimental to Appellant. The record does not demonstrate Gonzalez actively represented conflicting interests, or that the conflict had an adverse effect on specific instances of counsel's performance. *Ex parte Morrow*, 952 S.W.2d at 538. We find no conflict of interest.

### b. Failure to communicate with Appellant or keep him reasonably informed

Appellant argues Gonzalez was deficient at the outset of trial when Gonzalez failed to appear at Appellant's June 13, 2018 arraignment and August 7, 2018 bond forfeiture hearing. Appellant also maintains Gonzalez failed to keep him reasonably informed on the status of the case. Furthermore, Appellant claims Gonzalez fell below the standard of prevailing professional norms by not reviewing discovery with him or visiting him in person to discuss his case.

The record does not support Gonzalez failed to communicate with Appellant or keep him

---

[1] The doctrine of estoppel stands for the proposition that a defendant cannot complain on appeal about an action he requested or inducted. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex.Crim.App. 1999). For this additional reason, Appellant's conflict of interest claim is overruled.

reasonably informed. Gonzalez testified he spoke with Appellant often about the case and Gonzalez's investigator visited Appellant while he was incarcerated. Gonzalez testified Appellant made about fifty calls to his office during the preparation of trial, which was verified by jail records of the phone calls. The record is replete with conflicting testimony and as the trier of fact and credibility, we defer to the trial court in its credibility determinations. On a credibility determination alone, this argument is without merit. *Moreno v. State*, No. 13-04-00195-CR, 2005 WL 1654741, at *5 (Tex.App.—Corpus Christi July 7, 2005, no pet.)(mem. op., not designated for publication).

### c. *Failure to investigate or call witnesses*

Appellant contends trial counsel's decision not to present evidence or witnesses during the guilt-innocence phase or punishment stage is inexcusable and unreasonable. Blood evidence was found at the scene and Appellant complains Gonzalez was ineffective in not seeking DNA testing of the blood evidence, which according to Appellant, would have disproved the charges against him.[2]

Appellant was charged with two counts of family violence against Arzate, a member of his family or household, by impeding the normal breathing or circulation of the blood of Arzate by blocking her nose or mouth, and by impeding the normal breathing or circulation of the blood of Arzarte by applying pressure to her throat or neck. The offense is committed by intentionally, knowingly or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. TEX.PENAL CODE ANN. § 22.01(b)(2)(B). There is no requirement of proving, or disproving, a

---

[2] Appellant also argues Gonzalez's failure to test the blood at the scene further amounts to a failure to present a defense. For the same reasons articulated in this failure to investigate analysis, we find Appellant's failure to present a defense argument meritless.

7

blood match. Moreover, the State's main witness, H.H., testified to being a witness to the assault; she testified she saw Appellant on top of Arzate as he pinned her to the bed. She described the manner in which Appellant's left hand was on Arzate's neck and his right hand over Arzate's mouth and nose. We fail to see how the charges against Appellant would have been disproved by blood evidence, especially in light of H.H.'s testimony.

As part of his ineffective assistance of counsel claim, Appellant also maintains Gonzalez was ineffective for failing to call him to testify in his own defense. Gonzalez testified Appellant told him he did not want to testify at any phase of trial. Gonzalez further maintained, "He told me at all times he did not want to testify, and I agreed with that, given his violent past, given what would have come in." Had Appellant declared he wanted to testify, Gonzalez stated, "[i]f he had wanted to, I would have put him on the stand. It would have been against my advice, but I would have put him on the stand."

Although a defendant has the right to testify at his own trial, we are again impeded with conflicting testimony. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987). To reiterate, at a hearing on a motion for new trial, the trial court is the sole judge of the credibility of witnesses and the weight afforded to their testimony. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). Appellant further argues he told Gonzalez he knew of at least eight people that could refute the allegations against him, or, in the alternative, bolster his character and Gonzalez's failure to present these witnesses was ineffective assistance of counsel.

Appellant has failed to demonstrate he was prejudiced by Gonzalez's failure to call Appellant or these character witnesses. *Moreno v. State*, 1 S.W.3d 846, 865 (Tex.App.—Corpus Christi 1999, pet. ref'd). It is not ineffective assistance of counsel to not call a witness to the stand when, in trial counsel's reasonable judgment, a potential witness's testimony could go either

8

way—when the testimony could just as much be favorable as damaging. *Damian v. State*, 881 S.W.2d 102, 110 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). In fact, the failure to call any witnesses at all is of no consequence unless a defendant can show that the absent witnesses were available and that he would have benefitted from their testimony. *Wilkerson v. State*, 726 S.W.2d 542, 551 (Tex.Crim.App. 1986). Appellant does not provide detail as to who these witnesses are, the benefit their prospective testimonies would have had on his defense, or the benefit he was deprived of due to the absence of their prospective testimony. To prevail on a claim of ineffective assistance for failure to call certain witnesses, a defendant must rebut the reasonable possibility that trial counsel did not feel the witnesses were material or credible; Appellant has not done so. *See id*. We find Appellant has not shown Gonzalez was ineffective with regard to his alleged failure to investigate and failure to call witnesses arguments.

### d. *Failure to object to hearsay testimony and extraneous offense evidence*

Appellant argues Gonzalez failed to object to plain testimonial hearsay and extraneous offense evidence that had no conceivable strategic benefit to his defense. Appellant alleges hearsay testimony was allowed on seven occasions and speculative testimony on another occasion; however, Appellant merely cites to these instances and does not offer anything further as to any of these alleged instances. Appellant points our attention to an acronym the State used— "SOS" to mean "same old stuff," alleging this was not the first time Appellant committed the crimes charged against him. According to Appellant, a reasonable juror could easily infer from all the extraneous evidence introduced at trial that Appellant had a repetitive behavior of violence.

The State argues Article 38.371 of the Code of Criminal Procedure provided an avenue for the complained of testimony. Article 38.371 allows the testimony of all relevant facts and circumstances that would assist the trier of fact in determining whether a defendant committed

9

certain family-violence-related offenses. *Fernandez v. State*, 597 S.W.3d 546, 565 (Tex.App.—El Paso 2020, pet. ref'd); TEX.CODE CRIM.PROC.ANN. art. 38.371. Evidence admissible under Article 38.371 includes evidence that: (1) explains why a victim of domestic violence is unwilling to cooperate with prosecution; (2) confirms the victim's initial—and later recanted—statements to police; or (3) contextualizes the nature of the relationship between victim and assailant. *Fernandez*, 597 S.W.3d at 566. The State argues all three reasons for admissibility are satisfied due to: (1) the on-going physical abuse of Arzate by Appellant—confirmed by threats to kill her family; (2) Arzate's initial statements to police that were later recanted by way of avoiding her subpoena and signing a non-prosecution affidavit; and (3) context to an on-going abusive relationship between Arzate and Appellant. We agree. Appellant has not rebutted the presumption that Gonzalez's conduct fell below the wide range of reasonable professional assistance based on the allegation he failed to object to these arguments.

### e. *Improper jury argument*

Appellant argues the State made improper closing arguments that Gonzalez failed to object to. The State told the jury, "You're punishing him based on his prior history and for the offense that you found him guilty in this case. All right. That's what you're going back there to go do." The State also said,

> What you're going to be doing with your sentence is going to be doing a number of things. It's going to be punishing Mr. Fonseca for his conduct for sure. . . . [Y]ou need to punish him for habitually breaking the law and not learning from these kinds of things. And if you look, there's a history of assaultive conduct there. . . . [P]art of what you're doing, in addition to punishing him, is you're keeping our community safe.

No objections were made to these jury arguments. Appellant's six prior felony convictions were admitted into evidence during the punishment phase of trial.

In Texas, "[t]he right to a trial untainted by improper jury argument is forfeitable" and is subject to the normal rules of error preservation. *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex.Crim.App. 2018)(*citing Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996)). The trial judge "has no duty to enforce forfeitable rights unless requested to do so." *Marin v. State*, 851 S.W.2d 275, 279-80 (Tex.Crim.App. 1993). To preserve a complaint for appellate review, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX.R.APP.P. 33.1(a)(1). To cure erroneous jury argument, "the defendant must object and pursue his objection to an adverse ruling." *Hernandez*, 538 S.W.3d at 622. A defendant who fails to pursue his objection to an adverse ruling forfeits his right to complain on appeal. *Id.* Jury argument is permitted if it is (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Mathews v. State,* Nos. 01-89-01240-CR & 01-89-01241-CR, 1991 WL 3445, at *3 (Tex.App.— Houston [1st Dist.] Jan. 17, 1991, no pet.)(not designated for publication).

Because Appellant's six prior felony convictions were admitted into evidence during the punishment phase of trial, we find counsel did not err for allegedly failing to objecting to the State's permissible jury argument. *See Mathews*, 1991 WL 3445, at *3 ("[T]he prosecutor did mention appellant's prior convictions, but only as a summation of the evidence admitted during the punishment phase. . . . We cannot fault counsel for not objecting to the State's permissible jury argument.").

### f. *Cumulative error*

Lastly, Appellant argues there is a cumulative prejudicial effect of all the alleged errors. However, Appellant has failed in all his ineffective assistance of counsel claims. When a defendant has shown no error, there can be no cumulative error or harm. *Manderscheid v. State*, No. 14-12-

00579-CR, 2013 WL 6405470, at *10 (Tex.App.—Houston [14th Dist.] Dec. 5, 2013, no pet.)(mem. op., not designated for publication). Accordingly, this argument fails; there is no cumulative prejudicial effect.

In light of all the circumstances, the identified acts or omissions of counsel were not outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. Appellant has failed to rebut the strong presumption that counsel rendered adequate assistance and it follows there is no reasonable probability that but for counsel's alleged errors, the result of the proceeding would have been different. *Id*. The trial court did not abuse its discretion in denying Appellant's motion for new trial based on his ineffective assistance of counsel claims. *Colyer*, 428 S.W.3d at 122. Issue One is overruled.

## CONFRONTATION CLAUSE

In Issue Two, Appellant argues the trial court abused its discretion by admitting testimony in violation of the Confrontation Clause.

### *Standard of Review & Applicable Law*

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002). A trial court's ruling will not be reversed unless that ruling falls outside the zone of reasonable disagreement, and a reviewing court should afford great deference to a trial court in its decision to admit evidence. *Id*. at 761; *see also Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex.Crim.App. 1990)(op. on reh'g). If a trial court's ruling of the admission of evidence is correct on any theory of law applicable to the case, it should be sustained. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex.Crim.App. 2002). In accordance with the issue at hand, the legal ruling of whether a statement

is testimonial under *Crawford* is a question of law that an appellate court reviews *de novo*. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

The Confrontation Clause of the Six Amendment affords an accused the right to confront witnesses in all criminal prosecutions. U.S. CONST. AMEND. VI. The Confrontation Clause bars the admission of a declarant's out-of-court statements that are "testimonial" in nature unless the declarant is unavailable to testify at trial, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 53-54. *Crawford* drew a distinction between testimonial and non-testimonial statements that the Fort Worth Court of Appeals recognized, explaining the "threshold question" under a *Crawford* analysis is whether the statement was "testimonial in nature." *Rangel v. State*, 199 S.W.3d 523, 532–33 (Tex.App.—Fort Worth 2006), *pet. dism'd, improvidently granted*, 250 S.W.3d 96 (Tex.Crim.App. 2008).

Although the Court in *Crawford* did not provide a bright-line definition of the term "testimonial," the test is objective and the fundamental inquiry is whether the primary purpose of the call was to "enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Statements that describe past events are likely to be considered testimonial, as opposed to statements made contemporaneously as events are occurring. *See Davis*, 547 U.S. at 830 (noting the distinction between questions seeking to determine "what is happening," as being less likely to be testimonial than statements made in response to being asked "what happened"). Statements made to resolve an ongoing emergency—such as those in 911 calls—are not typically considered testimonial in nature; however, once the emergency ends, statements made thereafter may become testimonial. *See id.* at 829. Hence, key to the testimonial analysis is determining "whether the questions asked by the responding call taker were intended to 'elicit[] a response from the caller that would enable him to take steps to resolve the emergency,'

13

or whether they were 'directed at eliciting information about the defendant's actions to be used in a future prosecution.'" *Knight v. State*, No. 08-16-00123-CR, 2018 WL 3867570, at \*7 (Tex.App.—El Paso Aug. 15, 2018, no pet.)(not designated for publication)(*citing Ford v. State*, No. 08-14-00093-CR, 2016 WL 921385, at \*3 (Tex.App.—El Paso Mar. 9, 2016, pet. ref'd)(not designated for publication)).

*Analysis*

During the direct examination of El Paso Police Officer Anthony Holmes, the State sought to admit Exhibit 2B—a video of Arzate taken at the scene. The following occurred at trial during the introduction of the exhibit:

> THE STATE: At this time, the State would move to enter what has been marked as State's exhibit 2B into evidence. Let me rephrase. The State is offering 2A into evidence, but for purposes of publication, only 2B, in that it goes and it shows the complaining witness's demeanor at the time.
>
> .                    .                    .
>
> THE DEFENSE: Again, Your Honor, this is going to be clearly hearsay testimony. It's going to be out of court statements made for the truth of the matter asserted. I have no way of examining the person on that video. I believe that they need the complaining witness here in order to enter that video. What was asked would be completely different than the questions I would have asked had I been there. And so to allow the video to come in would be extremely prejudicial to my client, Your Honor, because it would not allow him to confront the witness which is making the alleged accusation on that video against him.
>
> THE COURT: All right. But did you hear the State's -- what the -- how the State intended to offer for a limited purpose only? It's just to show demeanor.
>
> .                    .                    .
>
> THE STATE: What the State is offering has no sound. There are no statements. There's no hearsay because there's no statements being offered. It is only being offered to show her demeanor. There is no sound in 2B, which is what the State is moving to enter into evidence at this time.
>
> .                    .                    .

14

THE STATE: It has been authenticated through 2A, which is the original, which contains the sound. But the State is only offering into evidence 2B, which is that same video with no sound. There is no hearsay because there's no statements.

THE DEFENSE: I believe the video in and of itself is a statement, Your Honor. I believe that showing that without allowing me to question as to her demeanor, how she looked, what happened that evening.

THE COURT: I'm going to overrule your objection because you have an opportunity to cross-examine the officer who is testifying as to the complaining witness's demeanor. So I'm going to allow it and overrule your objection.

The video, without audio, was published to the jury.

Appellant maintains the same argument on appeal—the video was admitted in violation of the Confrontation Clause. The State counters Appellant is barred from asserting either a Confrontation Clause or hearsay objection under the doctrine of forfeiture by wrongdoing. In addition, the State argues a silent videotape does not constitute inadmissible hearsay and thus, does not violate the Confrontation Clause.

The doctrine of forfeiture of wrongdoing, as applied to bar a Sixth Amendment Confrontation Clause claim, is based on the principle that any tampering with a witness should once and for all estop the tampered from objecting based on the results of his own chicanery. *See Colone v. State*, 573 S.W.3d 249, 264 (Tex.Crim.App. 2019). Courts have widely accepted the doctrine to reject both Confrontation Clause and hearsay claims. *Id*. Texas has also codified the doctrine in Article 38.49 of the Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 38.49.

At the hearing for the motion for new trial, Arzate testified the reason she did not want to proceed with the prosecution was not because the assault did not happen, but because Appellant "threatened to take my family down one by one, starting with my mother that's 85 years old, and my daughter was terrified." Arzate explained Appellant communicated these threats to her. These

15

threats led Arzate to sign a non-prosecution statement; the non-prosecution statement was sworn under penalty for perjury and admitted as State's Exhibit 1. The non-prosecution statement reads:

> It is my personal desire to drop the above charge, and I ask the State to dismiss the case presently pending against the defendant. I do not wish to testify against the defendant as a witness, although I am aware that I can be compelled to do so. I have not been compelled, threatened, or coerced to sign this affidavit in any manner. Nor have I been offered any bribe or improper inducement as benefit or reward for signing this affidavit. I am signing this freely and voluntarily.

The trial court asked Arzate if she was aware the trial was scheduled to start the day after she signed her non-prosecutorial statement. Arzate confirmed she was aware and emphasized she did not want to testify for the protection of her family. Arzate maintained:

> I signed the affidavit because I felt that if [Appellant] got out with a bond, he was going to hurt my family, kill them, like he told me, and finish strangling me. He told me that he was going to have to kill me because he was going to have to go away for a long time.

A logical inference is that Appellant threatened Arzate and her family to prevent Arzate, the complaining witness, from testifying against him. *See Gonzalez v. State*, 195 S.W.3d 114, 125 (Tex.Crim.App. 2006)(finding a logical inference that the appellant killed the victims because he did not want any witnesses to his crime, especially witnesses who knew him and knew where to find him). The doctrine of forfeiture precludes Appellant from objecting to the admission of the testimony. *See Colone*, 573 S.W.3d at 264.

In addition, the doctrine of forfeiture by wrongdoing, as a doctrine of estoppel, trumps the hearsay rule. *Colone*, 573 S.W.3d at 265. For hearsay purposes, a statement is: (1) an oral or written verbal expression, or (2) nonverbal conduct of a person, if it is intended by the person as a substitute for verbal expression. TEX.R.EVID. 801(a). As a threshold matter, we determine the evidence at issue does not constitute a statement. The video is without audio and Arzate did not intend it to be a substitute for verbal expression. The original video, which was admitted as Exhibit

16

2A, contained audio; the State purposely removed the audio and introduced the video without audio to show only the demeanor of Arzate. Because the exhibit does not constitute a statement, there is no hearsay violation, and thus, no Confrontation Clause violation. *See Watson v. State*, 421 S.W.3d 186, 198 (Tex.App.—San Antonio 2013, pet. ref'd)(concluding the silent videotaped recording in question was neither testimonial nor a statement and did not violate the appellant's right of confrontation).

The trial court did not abuse its discretion in admitting the video. Appellant's confrontation right was not violated. Issue Two is overruled.

## CONCLUSION

For these reasons, we affirm.


July 13, 2022

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

(Do Not Publish)

17